ejectment, basing her claim purely upon the right of passage which she has in common with all the other members of the public. If this be a way at all, it is a public way under the pleadings and proof, and for its obstruction the remedies must be resorted to which are applicable to that class of way as distinguished from those which are used for the obstruction of a private way.

Now, Dec. 28, 1923, the motion for judgment n. o. v. is granted, and judgment is entered notwithstanding the verdict in favor of the defendants. Exception noted and bill sealed to the plaintiff.

From John M. Urey, Clearfield, Pa.

---

## Willing's Estate.

*Wills—Construction—Direction to pay annuities in francs.*

Testatrix, an American citizen long resident in France, whose property was invested in the United States, although her income had been received and spent by her in French money, died in 1896, leaving a will made at Nice, by which she directed her trustees to pay two certain annuities of 10,000 francs each for the respective lives of the annuitants: *Held*, that the annuities should be paid in so-called gold francs (the value of which is 19.3 cents), and not in paper francs (worth 4.45 cents), although the paper franc is a legal tender in France for payments to be made under wills or trusts.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1897, No. 264.

GEST, J., auditing judge.—Mathilda Lee Willing died on Feb. 14, 1896, leaving a will and numerous codicils, by which she devised her residuary estate to the accountant in trust, so far as is here relevant, to pay the income to Norah Willing, now Eleanore Willing Patterson, and Violet Lee Willing, now Morris, for their lives, with remainder over, as stated in the will, subject, however, to the payment of two certain annuities of 10,000 francs each, now payable to Robert E. Lee Potestad and Rupert Featherstonaugh, for their respective lives.

This account was filed for the purpose of obtaining a judicial determination of the question whether the said annuities should be paid according to the value of the franc as of the date of the second codicil of the will by which they were given, viz., May 12, 1892, or of the date of the death of the testatrix, Feb. 14, 1896 (which seems immaterial), as contended by the annuitants, or should they be, on the other hand, paid annually according to the value of the franc as it might be on the due date of every year, as contended by the legatees of the residuary income.

The testatrix was an American citizen, residing at Nice, in France, and made her will there on Dec. 19, 1888. Subsequently she executed numerous codicils, by the second of which, dated May 12, 1892, she bequeathed the annuities in question, and another annuity of 1000 francs to a domestic, now deceased, and three pecuniary legacies in francs to other persons resident in Nice. By the fourth and subsequent codicils she bequeathed numerous other legacies in francs to legatees living in France or in this country.

It appears that the annuities in question have always been paid by the trustee in francs according to the rate of exchange at the time of the payment, but since the recent depression of the franc as one of the consequences of the late War of the German Aggression, the annuitants have demanded that the trustee pay their annuities according to the par or standard value of the franc, or, in other words, in what might be called gold francs, the value of which is 19.3 cents. It was also stated that the value of the franc at the time of the execution of the second codicil was 19.41 cents, at the date of the

death of the testatrix 19.39 cents, and on Feb. 14, 1924, the due date of the annuities, 4.45 cents. It was also shown that the French paper franc has been and is a legal tender in France for payment to be made under wills or trusts.

The question is interesting and important, and it is surprising that there is so little authority upon it. We might, indeed, be tempted to apply the method suggested by Swinburne, part 1, section 11, and inquire whether it is likely that the testator, whilst he is making his will, if he had been asked whether he would have thus or thus disposed, would have answered affirmatively, yet Swinburne, while commending this method of interpretation, adds the caution that it should be discreetly handled by a grave judge with leaden feet, and an examination of the civil law, as referred to by him, shows a wide divergence of opinion among the doctors, for a testator cannot be understood to direct except what he has expressed in the language he has used. But, in construing the words of a will, it is, according to all the authorities, permitted to consider the circumstances surrounding the testator when the will was made, in order to ascertain the meaning of the words that he has used. And in the present case, the testatrix, although an American citizen, had long been resident in France, and while her property was invested here, her income was received by her and spent in French money. All her pecuniary legacies were expressed in francs, and when she wrote the codicil to her will, by which these legacies were given, and at her death, the value of the franc was undoubtedly at the par of 19.3 cents; a condition that has continued until recently, the slight fluctuations in the rate of exchange being so trivial as to be unimportant. The fall in the value of the franc as compared with that of the dollars constituting the estate of the testatrix was due to a catastrophe which could never have been in the mind of the testatrix, and I cannot avoid the conclusion that when the testatrix bequeathed the legacies or annuities in francs, she intended to give legacies or annuities, the value of which was to be measured by the money she was accustomed to use. And perhaps her intention in this respect is even clearer in the case of an annuity than in that of a legacy payable outright once and for all, for when a testator bequeaths an annuity the manifest intention is to give to the annuitant a certain fixed annual sum and not an income that, for one reason or another, may fluctuate from year to year. Nor can I see that any injustice is done to the residuary legatees of the income. If these annuities are paid now in francs of par value, or what might be called gold francs, the residuary legatees will receive now, as they always have, the entire income after the deduction of annuities of exactly the same value, and it does not seem to me to be equitable that they should be benefited by the fall in value of the paper franc.

As I regard this question as purely one of testamentary construction, and the will is an American will, I do not think it relevant that the paper franc, so called, is a legal tender for the payment of debts in France, or for payment to be made under French wills, nor do I think it necessary to comment on the cases decided concerning the measure of damages in cases of breach of contract payable in foreign money and the like. I shall, however, refer briefly to two cases which support the conclusion at which I have arrived.

In Hess's Estate, 120 N. Y. Misc. 372 ; s. c., 198 N. Y. Supp. 573, decided by the Surrogate of West Chester County, New York, the testatrix, whose estate was situated in the United States, and who appears to have been an American citizen of German birth, and, at all events, resided here when she died, had made her will in Germany and left legacies expressed in marks to residents of Germany. The value of the mark had been, since she made her

will, practically wiped out, but it was held by the court that the bequests were payable in gold marks at 23.821 cents, and the court said that "any other construction would nullify the terms of the will creating the gifts to the four legatees. A payment in depreciated currency was never contemplated, and equity will not permit it to be done." And the court also observed, as I have above said, "the construction that the four legatees should be paid in gold marks will cause no discrimination, as the residuary legatee will receive the balance of the estate in United States money."

In Graveley v. Graveley, 25 So. Car. 1, decided in 1885, the testator was domiciled in England, died in 1865, and by his will, made in 1861, gave $2000 to his nephew in South Carolina, to be paid at his majority, and the question was whether the legacy was satisfied by the purchase by the executrix, in 1873, of such an amount of English Consols as American paper money would then buy. The court said:

"The will was executed in England, before the national currency of the United States (which, growing out of the late war, was abnormal) had come into existence; and we are not at liberty to conclude that the testator foresaw that there would be such paper currency in the United States, or contemplated the possibility of his executrix satisfying the legacy in such currency at a discount, before the time indicated for its payment. We cannot doubt that when the testator said 'dollars,' he meant real dollars in coin, or its equivalent, and not mere paper promises to pay dollars, rising or falling in value according to circumstances.

". . . The plaintiff, when he reached full age, was not, as it seems to us, bound to accept what was tendered by the executrix as his legacy, and is now entitled to recover $2000 in coin, or its equivalent, with the proper accumulations of interest."

Some other cases, including Guinness v. Miller, 291 Fed. Repr. 769; Cockerell v. Barber, 16 Ves., Jr., 461, and Bowditch v. Soltyk, 99 Mass. 136, were cited, and have been considered, but it does not seem to me to be necessary to prolong this adjudication by any discussion of them. The facts in all of these cases are different, and none of them should, in my opinion, lead to a different conclusion. I am of opinion that the annuities should be paid according to the par value of the franc.

I am not sure, from the record, whether the collateral tax on these annuities has been paid. If it has not, the awards will be made subject to such payment. The balance of principal, composed as stated, is $160,524.96. The balance of income is $7745.79, which balances are awarded to the trustee under the will for further accounting, and with instruction to pay the annuities to Robert E. Lee de Potestad and Rupert Featherstonhaugh in accordance with this adjudication, subject to any tax that may be due.

And now, May 5, 1924, the account is confirmed *nisi*.

Legatees of the residuary income excepted.

*Effingham B. Morris, Jr.*, and *John Hampton Barnes*, for exceptions.

*Joseph Carson, Hampton L. Carson* and *Shirley Carter*, of the Baltimore Bar, contra.

VAN DUSEN, J., June 27, 1924.—The four judges of the court who heard argument on the exceptions being equally divided in opinion, the exceptions are dismissed.

GEST, J., did not sit.